# Staunton.

## SCHOOL BOARD OF CITY OF ROANOKE v. GEORGE W. PAYNE.

September 20, 1928.

The opinion states the case.

*Robert C. Jackson*, for the appellant.

*Horace M. Fox* and *Woods, Chitwood, Coxe & Rogers*, for the appellee.

WEST, J., delivered the opinion of the court.

On August 1, 1919, George W. Payne entered into a written contract to sell to the school board of the city of Roanoke a parcel of land located on the southwest corner of Commerce and Church streets, the same being a portion of the block bounded by Commerce, Luck, Roanoke and Church streets, in the city of

Roanoke, Virginia, known as the "Commerce Street Square," for the sum of $50,000.00, with interest, and upon terms therein stated. The contract of sale contained the following clause:

"This sale is made and the price and terms agreed upon herein are based upon the fact that the herein described property is to be used for public free school purposes, and it is mutually covenanted and agreed between the parties hereto, that in the event the school board of the city of Roanoke, Virginia, shall determine not to so use it, but shall determine to sell the same at any time within ten years from this date, then, and in that event, the said George W. Payne, his heirs or assigns, shall have the option to repurchase the same at the price of $50,000.00, with interest thereon at six per cent from the date hereof to the date of such repurchase."

On February 14, 1920, George W. Payne executed a deed to the school board of the city of Roanoke, conveying the property to it, pursuant to the terms of the contract, except that by some oversight the "repurchase clause," above quoted, was not included in the deed. Some time thereafter the omission was discovered and Payne diligently endeavored to get from the board a corrected deed. Finally, on August 30, 1921, the board passed a resolution authorizing the execution of a deed of correction, but on March 22, 1922, before the deed was executed, rescinded its action.

On March 20, 1923, George W. Payne, complainant, instituted this suit against the school board of the city of Roanoke, defendant, to compel it to execute, acknowledge and deliver to complainant such a writing as will reform the deed of February 14, 1920, and make it conform to the contract of August 1, 1919, by

including therein the"repurchase clause" above quoted; and further to compel the school board, upon payment by Payne of the sum of $50,000.00, with interest, to reinvest George W. Payne with the title to the land described in the contract of August 1, 1919.

On a final hearing, upon the amended bill of complaint, the demurrer and answer thereto of the defendant and the depositions of witnesses and exhibits filed therewith, the court, on April 24, 1928, entered a decree granting the relief sought, as outlined above, adjudging that the deed of February 14, 1920, be reformed so as to include the "repurchase clause;" that the defendant convey the property therein described to George W. Payne upon the payment by him of the sum of $50,-000.00, with interest thereon from February 14, 1920, to the 20th day of March, 1923; that the rents and profits remain with the school board, and that Payne be relieved from the payment of any interest on the purchase money after March 20, 1923.

This is an appeal from that decree.

The only assignment of error is that the court erred in decreeing specific performance of the contract of August 1, 1919, between Payne and the school board.

The bill was filed March 28, 1923. The answer was filed June 22, 1923. Depositions were taken on behalf of the complainant but none on behalf of the defendant, and on June 29, 1923, a decree was entered directing that the repurchase clause be inserted in the deed, but by consent of parties, the court's decision of the question of specific performance was postponed, and after the taking of other depositions was rendered on April 24, 1928.

The defendant having made no real fight against the insertion of the repurchase clause in the deed, the only question to be decided is: Is Payne entitled to have the property deeded back to him, and if so from what time s he liable for interest?

The property was sold to the school board by Payne for public free school purposes, and it was mutually agreed between the parties to the contract that in the event the school board should "determine not to so use it, but should determine to sell the same at any time within ten years from this date, then and in that event the said George W. Payne, his heirs and assigns, shall have the option to repurchase the same at the price of $50,000.00 with interest thereon at six per cent. from the date   *   *.''

The school board admits in its petition that sometime in the fall of 1921, it determined not to use the Payne property for public school purposes and acquired a high school site on Campbell avenue, and proceeded to erect a high school building thereon.   But the petitioner denies that it ever determined *to sell* the property, within the meaning of the language used in the contract.   This last contention is not sustained by the record.   It appears from the evidence that on April 23, 1923, the Hotel Corporation wrote the school board as follows:

"Roanoke, Va., April 23, 1923.

"Mr. C. E. MITCHELL, Chairman,

"Roanoke City School Board,

"Roanoke, Va.

"DEAR SIR:

"This is to advise that we are in a position to and are now ready to buy the plot of ground bounded on the east by Commerce street, south by Luck avenue, west by Third street and North by Church street, known as the abandoned high school site, either jointly with Kazin Temple, for the purpose of erection of a temple and a hotel, or we will buy the entire property ourselves for the purpose of erecting a hotel, at the sum

of $500,000.00 on terms of $100,000.00 cash and the balance in four equal annual payments, one, two, three and four years from date, with interest at six per cent, provided we can get the property within a reasonable length of time. Right reserved to anticipate payments.

"This letter was authorized at a meeting of our stockholders today.

"Asking your consideration of this matter as promptly as practical, we remain,

"Yours very truly,

"THE HOTEL CORPORATION,

"By A. N. Armes, President."

Upon receipt of this letter the board unanimously adopted the following resolution:

"Whereas, the board has received a communication from the Hotel Corporation indicating a desire to purchase the school property embraced in the square bounded by Commerce street, Church avenue, Roanoke street and Luck avenue, and

"Whereas, the school board desires to avail of the proceeds of sale of such property for the purpose of completing the present plans for additional school facilities, for which sufficient funds are not immediately available,

"Now, therefore, be it resolved—

"That the chairman of the board be and he is hereby authorized to make application to the proper court, having jurisdiction, for authority to advertise and subject such property (to) sale at public auction as required by the statute governing the sale of school property, upon the following conditions, to-wit:

"First: That said property shall not be sold for a sum less than five hundred thousand ($500,000.00) dollars.

"Second: That said sale be authorized with the understanding that possession of the property, except the Commerce Street School, may be given as of February first, 1924, and that the Commerce Street School portion of the property will be vacated and possession of that given to the purchaser June first, 1924.

"Third: That the court be petitioned to fix the terms of payment, so that at least one-fifth (1–5) of the purchase price shall be paid in cash, and that the remainder shall be paid in not more than four equal annual installments, with interest at six per cent per annum, with the right on the part of the purchaser to anticipate such deferred payments.

"Fourth: That this petition or application to the court for authority to sell be deferred a reasonable time until the board can have opportunity to consider and better comprehend the probable outcome of certain suits which have been filed against the school board which would seem to question the right of said board to subject said school property to sale.

"Fifth: That in entering decree, if granted, the court be asked to reserve the right to confirm or disapprove an offer of purchase until the proposed purchaser shall indicate the nature of improvements contemplated to be made, so that the ultimate civic appearance of said property may be reasonably assured.

"Sixth: That said chairman be authorized to request the city solicitor to prepare such application to the proper court, so that it may be in readiness for presentation upon further resolution of this board when it deems the time opportune to proceed with the proposed sale of said property.

"The meeting then adjourned.

"J. A. PAGE, Clerk."

On April 26, 1923, the board wrote Mr. Armes, president of the Hotel Corporation, in reply to his letter of April 23, 1923, as follows:

"Your letter was presented to the school board last night, and the writer, in conjunction with the city solicitor, was officially authorized to make application to the court for the sale of the property. It is a matter of common knowledge that there are two suits pending against the school board in connection with the title to two of the tracts included in this boundary, and it is our purpose to attempt to force an early settlement of these suits, if they cannot be settled otherwise than in court. For this reason, we think it advisable to defer for a short time the actual advertisement of this property as required by law, and you will understand that we will push the matter with all possible dispatch."

It sufficiently appears from the foregoing letters and resolutions and the other evidence in the record that the school board of the city of Roanoke reached the unconditional *determination to sell* the property in question within ten years from the date of the contract. While the school board realized that Payne had rights in the property which must be recognized and respected, it is nowhere stated that the board's *determination to sell* was conditional on the elimination of Payne. Of course, to actually consummate the sale they had to make a satisfactory adjustment of Payne's claim.

Being unable to come to an agreement with Payne, the board undertook to deprive him of his right to repurchase the property by deferring its application to the court for its sale. This action was of no avail to them. Payne's right to repurchase had already become a vested right by the board's determina-

tion to sell the property. It nowhere appears that the determination to sell has been abandoned.

██ We are of the opinion that the repurchase clause is sufficient to support a suit for specific performance of the contract; but it is immaterial whether it be enforceable or not, since if it is invalid and not enforceable, Payne is entitled to a rescission of the entire contract and a reconveyance of the property to him upon paying back the purchase money.

█ In *Fox* v. *Windes*, 127 Mo. 502, 30 S. W. 323, 325, 48 Am. St. Rep. 648, 651, the law is stated thus: "The principle is recognized and established in this country almost precisely the same as in England, and rests upon the equitable ground that no man can be permitted to claim inconsistent rights with regard to the same subject, and that any one who claims an interest under an agreement, is bound to give full effect to that instrument so far as he can. A person cannot accept and reject the same instrument, or having availed himself of it as to part, defeat its provisions in any other part, and this applies to deeds, wills and all other instruments whatsoever."

In *Chapman* v. *Douglas County*, 107 U. S. 348, 2 S. Ct. 62, 27 L. Ed. 378, the court said: "As the agreement between the parties has failed by reason of the legal disability of the county to perform its part, according to its conditions, the right of the vendor to rescind the contract and to a restitution of his title would seem to be as clear as it would be just, unless some valid reason to the contrary can be shown."

It appears from the record that the school board abandoned the property for school purposes, determined to sell the same to raise money to build a school building on another location, directed proceedings to be instituted to obtain the court's consent to an immediate

sale of the property and assured a prospective purchaser that it would push the sale of the property with all possible speed. The school board admits in its answer to the original bill that the board did conclude to dispose of the property—that is, make final determination to sell the property.

There is no merit in the contention of appellant that appellee's rights were barred by laches.

The delay caused by Payne does not show any intention to abandon his rights or work any prejudice to another.

In *Kennedy Coal Corporation* v. *Buckhorn Coal Corporation*, 140 Va. 37, 124 S. E. 482, the court said: "Mere lapse of time, unaccompanied by any circumstances affording evidence of a presumption that the right has been abandoned, is not considered laches."

In *Spangler* v. *Johnson*, 98 W. Va. 584, 127 S. E. 398 (syllabus), we find this: "If the rights of creditors or innocent third persons have not intervened or in the consequence of the delay and conduct the wrongdoer's rights have not been affected, or prejudiced, generally it will not be held that he (the person seeking cancellation of the contract) is precluded from invoking the equitable remedy of rescission."

The decree complained of only requires George W. Payne to pay interest on the $50,000.00 from February 14, 1920, to March 20, 1923. In so decreeing the court erred. The contract of August 1, 1919, provides in terms that in the event Payne shall repurchase the property he shall pay interest at the rate of six per cent from the date of the contract to the date of the repurchase. Payne filed his bill for the correction of the deed and for specific performance in April, 1923. In his bill he alleged that he was "entitled to require the execution and delivery of a deed to him of said

property free from incumberances, upon the payment by him of the sum of $50,000.00, with interest thereon from the first day of August, 1919, which he is now ready, willing and anxious to do."

In *Sale* v. *Swann*, 138 Va. 198, 120 S. E. 870, it is held that the rule as to the adjustment of interest upon equitable principles applies where the contract is silent as to interest and "cannot be extended and applied to determine such a question when the parties have by their contract expressly determined their own rights as to interest."

When Payne learned that the board had determined not to use the land for free school purposes and to sell the land, he offered to pay the defendant the repurchase price and requested it to reconvey the land to him in accordance with the terms of the contract; but the board refused to accept the money or convey the property to him. Under these circumstances the board is not entitled to recover any interest on the purchase price after the date of the institution of this suit, March 20, 1923.

The decree under review will be so modified as to require Payne to pay interest on the $50,000.00 purchase price from August 1, 1919, to March 20, 1923, and as so amended will be affirmed and a final decree entered here accordingly. The appellant having substantially prevailed in this court, a decree will be entered here adjudging that appellant recover of appellee its costs incurred in prosecuting this appeal.

*Amended and affirmed.*