## CIRCUIT COURT OF THE CITY OF RICHMOND

Starr Electric Co.

v.

Federal Insurance Co.

March 14, 1989

Case No. LM 1590-1

By JUDGE MELVIN R. HUGHES, JR.

[The] defendant Federal Insurance Company's motion for summary judgment has been under advisement. For the reasons that follow, the motion is denied. Hereinafter, the plaintiff will be referred to as Starr and the defendant as Federal.

For purposes of this motion, the following facts are given and are not in dispute. These facts and other facts are set out under headings.

Dixie Constructors, Inc., and Adam Craig Ltd. Partnership were general contractors hired to renovate the Cohen Building on Broad Street in Richmond. Dixie hired the plaintiff, Starr, as a subcontractor to perform electrical work needed on the project. Dixie agreed to pay Starr for its work in monthly installments. Dixie and Adam Craig, as principals, and Federal as surety, executed a payment and performance bond to assure that all subcontractors would be [paid]. Thereafter, Starr performed electrical work on the project to the extent of $227,000.00 when the building burned. Starr now seeks payment from Federal for the work it completed under the terms of the payment and performance bond.

Federal seeks summary judgment on the following three grounds:

(1) Starr has no standing to sue under the payment and performance bond;

(2) Starr assumed risk of loss under contract, thus is barred from recovery;

(3) Starr was fully compensated under an insurance policy and cannot seek additional recovery.

The Court will deal with each issue according to the headings that follow.

## Standing

Because a provision in the bond states:

[n]o right of action shall accrue on this bond to or for the use of any person or corporation other than the obligees named herein.

Federal contends Starr lacks standing to sue because the above language expresses a clear intent of Dixie, Adam Craig, and Federal to preclude third parties from asserting claims.

Starr asserts that it need not be a named obligee to sue because Starr was an "intended beneficiary" under the bond. Starr relies on two cases to defeat Federal's position. The first case, *Bristol Steel & Iron Works, Inc. v. Plank*, 163 Va. 819 (1935), held that a bond which provided for the payment of persons performing labor necessarily contemplated a benefit to the laborers. This benefit, the Supreme Court reasoned, entitled the laborers to maintain a cause of action for payment due under the bond. *Id.* at 825.

In other words, so long as the bond necessarily and directly benefits third persons, it is immaterial that this protection was afforded [the obligees], not as an end in itself, but for the sole purpose of securing to the obligee some consequent benefit or immunity. In short, the motive . . . of the parties is quite a different thing from their intention. The former

is immaterial; the intention, as disclosed by the terms of the instrument, governs.

*Id.* at 825. *Bristol* established that intended beneficiaries may recover on the bond. Because the *Bristol* bond did not contain a provision restricting rights of action to the named obligees, as we have here, the case is not conclusive here. While Federal contends the restrictive provision in the bond conclusively establishes the obligees' intent to deny standing to third parties, what counts is the parties' intent. A party cannot maintain a cause of action on a payment and performance bond unless it is an obligee or intended beneficiary under the bond.

The second case is *Jessee v. Smith*, 222 Va. 15 (1981). That case establishes contractual intent is a fact question. While a payment and performance bond may, by its nature, "intend" to benefit third parties, the restrictive language in the bond makes the standing issue one to be resolved by the trier of fact.

### Risk of Loss

Federal claims the risk of loss provision in the contract between Dixie and Starr precludes Starr from seeking recovery against Federal because the provision shifts all risk of loss from Dixie to Starr. The risk of loss provision states:

All damages, direct or indirect, of whatsoever nature resulting from the performance of its work hereunder or resulting to the work hereunder from whatever cause shall be borne by [Starr] and all work hereunder shall be solely at its risk.

Because Starr agreed to assume the risk, Federal claims Starr cannot now recover.

At common law, a subcontractor, who was hired to participate in the renovation of an existing building, does not incur the risk of loss if the building is entirely destroyed. *See Fowler v. Ins. Co. of North America*, 155 Ga. App. 439 (1980). In *Fowler*, the Court held that one who has contracted to make repairs and additions to an

existing building is discharged by the destruction of the building after part performance and has a right to compensation for its past performance. Of course, freedom of contract principles permit parties to alter common law risk allocations by agreement.

An interpretation of the risk of loss part of the contract to a point where this issue can be resolved requires determining the parties' intentions. Contractual intent is a fact determination to be gleaned from the contract as a whole and the position of the parties. Even accepting Federal's interpretation, it is unclear that the provision would bar Starr from seeking compensation for past performance, which it says it is attempting to do here.

*Insurance*

Federal's final basis for summary relief rests on an insurance policy Starr maintained with Aetna Casualty and Surety Co. Under the contract between Dixie and Starr, Starr was required to maintain insurance for "broad form property damage." Federal claims this insurance was obtained solely to benefit Dixie and to insulate it from liability resulting from destruction of the building.

Starr maintained an installation floater policy with Aetna provided partial coverage to Starr for materials lost in the fire. According to Federal, this case is one in which Aetna seeks to subrogate to the rights of Starr against Dixie. Under Virginia law, Federal argues, an insurer cannot sue its insured. Federal, therefore, concludes because Dixie was a direct beneficiary of Starr's insurance policy, Aetna cannot now subrogate against Dixie.

Starr responds with three arguments:

(1) Starr was not required to maintain casualty property insurance covering the building.

(2) Dixie was not a beneficiary of the Aetna policy.

(3) The insurance policy is irrelevant because this is not an action for casualty loss, but an action to recover for work performed.

From the issues framed under this heading, there are material disputes between the parties regarding the facts and circumstances surrounding the Aetna insurance

policy. The insurance issue is likewise not one for summary disposition.

## Conclusion

For all the reasons herein, there is no point raised that can be resolved other than by determining later what the parties' intentions were during their dealings. By necessity, the case is not ripe for summary disposition, and Federal's motion is denied in all respects.