57 F.3d 1067
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Gerald L. TERWILLIGER, Plaintiff-Appellant,
v.
YORK INTERNATIONAL CORPORATION, Defendant-Appellee.
Gerald L. TERWILLIGER, Plaintiff-Appellant,
v.
YORK INTERNATIONAL CORPORATION; BRISTOL COMPRESSOR,
INCORPORATED, Defendants-Appellees.
 Nos. 94-1662, 94-1986.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 2, 1995.
Decided: June 16, 1995.
 
 Appeals from the United States District Court for the Western District of Virginia, at Abingdon. Glen M. Williams, Senior District Judge. (CA-92-131-A, CA-92-142-A)
 ARGUED: S.D. Roberts Moore, Gentry, Locke, Rakes & Moore, Roanoke, VA, for Appellant. Stanley Louis Amberg, Davis, Hoxie, Faithfull & Hapgood, New York, NY, York, for Appellees. ON BRIEF: Melissa W. Scoggins, Monica L. Taylor, Gentry, Locke, Rakes & Moore, Roanoke, VA; James W. Elliott, Jr., Steven R. Minor, Elliott, Lawson & Pomrenke, Bristol, VA, for Appellant. Peter Bucci, Robert T. Canavan, Davis, Hoxie, Faithfull & Hapgood, New York, NY; James P. Jones, Penn, Stuart, Eskridge & Jones, Bristol, VA, for Appellees.
 W.D.Va.
 REVERSED AND REMANDED.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Gerald Terwilliger appeals from an order of the United States District Court for the Western District of Virginia granting summary judgment in favor of appellees, York International Corporation ("York") and its subsidiary, Bristol Compressors, Inc. ("Bristol"), on Terwilliger's breach of contract claims. Because the district court erred in not allowing Terwilliger to show what, if any, consideration he received in exchange for assigning York the rights to his invention, we reverse.
 
 I.
 
 2
 In 1987, Bristol's Chief Operating Officer, Michael Young, asked Terwilliger, the company's Manager of Engineering Services, to help develop a new high efficiency compressor. Young told Terwilliger that "if he was successful," he would "be taken care of" and "properly rewarded." J.A. at 181, 213. Although not part of his general duties at Bristol, J.A. at 62, Terwilliger accepted the challenge and in early 1988 accomplished the task of inventing a commercially competitive compressor. York invested heavily in the invention's marketing and development and, in the years that followed, the compressor was an enormous financial success for the company.
 
 
 3
 On September 13, 1988, Terwilliger executed an assignment agreement, whereby he sold and assigned to Bristol his "entire right, title, interest and priority rights in and to all of [his] inventions, discoveries and improvements" in the compressor, in exchange "[f]or good and valuable consideration received." J.A. at 77 ("Assignment").
 
 
 4
 Two years later, York released Terwilliger as part of a general reduction in the work force. J.A. at 15.
 
 
 5
 On September 4, 1992, Terwilliger filed suit against York in federal court, based on diversity jurisdiction. He claimed that York breached its express or implied promises to compensate him for his services in designing the invention and to compensate him for the assignment of his patent rights, to the extent such rights were assigned. J.A. at 15-16. Terwilliger alleged that York, through Young, had promised to pay him for inventing the compressor and that the compensation, above and beyond his annual salary, would be based upon the future profits of the compressor.* He claimed further that he had received no consideration for his assignment. J.A. at 15, 67.
 
 
 6
 York moved for summary judgment. The company asserted that the only written agreement between Terwilliger and Bristol was the Assignment and that this Assignment supersedes any oral agreement which may have arisen between the parties. Terwilliger responded by claiming that lack of consideration for the Assignment rendered the written contract void and, irrespective of the Assignment's validity, the oral contract between himself and Bristol was enforceable.
 
 
 7
 The district court granted judgment in favor of York, Terwilliger v. York Int'l Corp., 853 F.Supp. 206, 208-09 (W.D.Va.1994), and this appeal followed.
 
 II.
 
 8
 The district court concluded first that "the consideration for Terwilliger's Assignment was his continued employment and potential bonuses," id. at 209, and then held that Virginia law forbids the court from inquiring into the adequacy of this consideration, id. (citing Jesse v. Smith, 278 S.E.2d 793 (Va.1981)).
 
 
 9
 While in some instances continued employment, salary, and bonuses may be valid consideration for an assignment, see Shamrock Technologies, Inc. v. Medical Sterilization, Inc., 903 F.2d 789 (Fed. Cir.1990), there was no evidence before the district court that the consideration referred to in the Assignment and intended by the parties was Terwilliger's continued employment and nothing more. The district court erred in assuming, without basis in the record, that the recital of "good and valuable consideration" in the contract was continued employment and in not permitting Terwilliger to present evidence to the contrary.
 
 
 10
 Under Virginia law, where consideration for a written contract appears as a mere recital, either party may show by extrinsic or parol evidence what the true consideration for the contract was. See Young v. Schriner, 57 S.E.2d 33, 34-35 (Va.1950) ("It is well settled that in this situation [where the assignment merely states 'for value received'] parol evidence rule does not exclude parol or extrinsic evidence of the full consideration. The effect of such parol or extrinsic evidence is not to contradict or vary the terms of the writing, but to establish the essential part of the contract which is not embodied or intended to be embodied therein."); Wood v. Southern Shale Brick Corp., 4 S.E.2d 360 (Va.1939); Richeson v. Wood, 163 S.E. 339, 343 (Va.1932) ("Where the consideration for a written contract is mentioned therein merely by way of recital and is not a contractual term of the contract, the general rule is that the true consideration for the contract may be shown by either party by extrinsic evidence, although it is different from that expressed. This is a well recognized exception to the parol evidence rule."). In particular, we take note of the Virginia Supreme Court's decision in Burke v. Sweeley, 12 S.E.2d 763 (Va.1941). In that case, the appellant conveyed a piece of property and signed a deed, "reciting the receipt of the purchase price" of $15,000. Id. at 764. Years later, when inheritors of the property moved to partition the property, thus requiring that liens on the property be cleared, the appellant stepped forward and claimed that he was never paid the full purchase price. The inheritors responded by arguing that the appellant "admitted receipt of the purchase price in full " and now could not "be heard to deny his own solemn averments." Id. at 765. The state's highest court disagreed; relying on its prior authority, the court concluded that,
 
 
 11
 where the consideration is mere recital of an existing fact, it may be shown to be other than that recited; that if the consideration is recited to have been paid, it may be shown that it was not; that if it be recited to be one sum, it may be shown to be a different sum....
 
 
 12
 Id. (citations omitted); see also id. ("[T]he modern and now almost uniform rule is that the recital in a deed of the receipt of consideration does not preclude parol evidence of its nonpayment."). Under these authorities, Terwilliger should have been allowed to present evidence of what consideration was promised and what he received.
 
 
 13
 Allowing the court, through parol evidence, to inquire into what consideration supported the contract, where the statement in the contract is "a mere receipt or acknowledgement of payment, and is not contractual in nature," Wood, 4 S.E.2d at 363 (citations omitted), is entirely different than the circumstance referred to by the district court, where the court inquires into the adequacy of consideration that is specified in the contract. See Jesse v. Smith, 278 S.E.2d 793 (Va.1981) (reversing trial court that inquired into adequacy of consideration and found contract was enforceable because contracted labor charge was "exorbitant"). The former is permitted under Virginia law, while the latter is not.
 
 
 14
 In this case, the statement of consideration in the Assignment is a mere recital--"[f]or good and valuable consideration received." The district court, therefore, should have permitted Terwilliger to present parol evidence of the true consideration. Because the appellant was denied this opportunity, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.
 
 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS
 
 
 *
 Young, who also has since left Bristol, testified at deposition that he did intend to compensate Terwilliger beyond his annual salary if he designed a commercially successful compressor, and further, that "Terwilliger did not receive the full measure that [he] had originally intended for him to receive." J.A. at 206